McCauley matters as they appear on the calendar, and there are three judges here today. Myself, Judge Ferguson, and Judge Callahan. But I want you to know Judge Ferguson and I have been together on the federal bench starting with the district court and ending up here. And it's been almost 40 years. So I know that sounds like a long time, but after you reach a certain age, life is on a gallop. So we'll hear some fast argument today. Is that you, Shickley? I thought I saw your name there. Welcome back from the Supreme Court. May it please the Court, my name is Rebecca Pinnell. I represent Ramon Capi-Barajas, the case United States v. Ramon Capi-Barajas. The only issue that the parties are in dispute about is whether or not the sentencing judge, Judge Shea, recognized his discretion to depart downward from the sentencing guidelines and whether or not the transcript indicates his recognition of discretion or not. And my review of the case law indicates what we really look at is whether or not the reason for the denial of a downward departure is based on the facts of the case or based on some sort of legal belief or legal holding that a departure is not appropriate. And how much of a reduction do you think should be given? Well, I think that the Court would have to assess that. I don't think there's a set amount. I know that. My question is, how much do you think should be given? How much would you plead? I would plead that he would get more than he had from his previous felony, that it would make sense. And I think the judge said, I think it would make sense to give you more time than you got for your previous felony. But he got 57 months, and I think that a reduction in the realm of two levels would have mitigated the extenuating circumstances surrounding his motivation and reasons for reentry. And I don't think the judge – I think the judge made clear that he didn't recognize his ability to depart on that basis. Let me ask you this. If – I sort of want to hear your best argument in response to – obviously, there was some advisement of your client in terms of – but he said, well, I didn't really, really think it would be this bad. Or, you know, I really didn't appreciate the difficulty, but he was told you can't come back and that, you know, it gets – things will happen to you if you come back. But then the court, the sentencing court also, I think, was directed to Mendoza, and the court acknowledged that in the sentencing transcript, that it had reviewed Mendoza. And Mendoza stood for the proposition that a downward departure was a possibility, but the court basically didn't feel it was appropriate here, said there's no – the court did say something to the effect of, well, there's no precedent, I guess, in the sense, why can't you interpret that to mean you didn't cite me a case that said, you know, on exactly your facts, that you're entitled to a downward departure. I've looked at Mendoza. I don't think a downward departure is appropriate here. I mean, Mendoza does talk about having this authority. I believe the court thought that Mendoza is simply inapplicable because it's a different context, not that he could analogize. My interpretation of when the judge said this is without precedent, it was this is without legal authority, and Mendoza is inapplicable. I think we also have to look at the government's arguments that were presented to the district court at the time of the sentencing hearing. The government wasn't taking the position that, well, in some cases, this could be a basis for downward departure if there's this or that showing. And certainly in cases that we've cited in the briefs, sometimes when the government presents a factual argument against a downward departure, the court's statement that I don't think there is a basis would tend to adopt the government's factual arguments. But in this case, the government argued that the deportation was lawful. He had no remedies, so therefore it doesn't matter the lack of process that occurred. That's a legal argument, not a factual argument under no basis. According to the government at the district court level, would a departure ever be appropriate? And then the judge, in responding to that, said very briefly that it's without precedent. So I think by saying the words precedent rather than without factual basis, the judge was saying I don't find legal authority. And while the case law says the judges need not say I recognize I have the discretion to depart, but I don't need to or I choose not to, on the other end, the judge does not need to specifically say I don't think I have discretion to depart for this court to determine that the judge did not recognize his discretion to depart. In addition, there's the cases I've cited that indicate that if there's some ambiguity, the solution is to remand so that the judge can make findings more specifically. And I think that that's appropriate in this case. The district court is in the special position to look at the circumstances of the case, the circumstances of Ramon Capi Barajas, the timing of when he was handed paperwork, what that paperwork said, and compare that to other individuals that appear before the court and make a determination whether or not it's credible that that was a mitigating circumstance. The worst case scenario is if it goes back, the court could give your client the exact same sentence, but just say, well, even though the Ninth Circuit thought I was confused, I wasn't confused, and I didn't want to give you a downward departure. Or I was confused, and now that I know that I can, I still don't want to give you one. And I think that's always the case when there's a remand for sentencing. It often happens in my experience that a case will be remanded because it's not clear that a judge understood the law correctly and the same sentence comes out. But I don't think that's a reason not to remand the case and allow the judge. And I do think the judge indicated he wanted to give less time. So if you just read on the face of the transcript what the judge's inclinations were, he wanted to give less time than the 57 months. Well, what specifically are you pointing us to in the sense that it could, you know, tell me why it's not just the judge sort of rambling about why if I had, you know, if I were doing the sentencing, because he kind of says, well, it should be more than what the original offense was, but, you know, maybe I wouldn't pick this amount, but why isn't it just sort of the ramblings of I'm not, you know, I'm not the legislative branch of the government and we have to deal with these? And why does that mean he didn't know that he still couldn't downward depart? I think that he addressed his concerns, his sympathy with Mr. Capybarajas' legal position, but yet felt his hands were tied. It's not a case where judges will often say, I think this is too much time, but factually I've looked at Chapter 5 and all the bases for downward departure, and unfortunately there's no facts to justify it. The judge was frustrated with the state of the law and indicated sympathy both towards Mr. Capybarajas as an individual as well as to his legal circumstance of just having some paperwork thrown at him. The initial paperwork that was given to him in July of 2003 was all in English. It was about two minutes according to, if you read the timing of when things were signed off on, a couple of minutes were passed by. And then several months later he's handed a notice in Spanish and English. That doesn't really matter here, though, does it? That doesn't really go to the heart of your issue. That goes to what the district court would look at. Correct. Correct. Your issue really is on the transcript here about whether the judge knew that, you know, he or she had the authority. Yes, Judge Edward Shaheed, that is exactly correct. And I think that the use of the word precedent, and also if you compare, there were two arguments for downward departure that I made. One was the summary nature of the deportation process, and the other one was concession of deportability. And the judge, although briefly, addressed the facts of the second request, saying that there was no colorable claim that the concession of deportability had any value, and that was the position the government had taken with Judge Shea. And so he discussed that request on the facts, whereas the first issue on the law saying it's without precedent, Mendoza, which is a drug case having to do with drug purity, is not applicable. Doesn't the, just playing the devil's advocate here, doesn't the factual determination sort of go against you? The factual determination? Well, that there's no, what you just stated about colorable issue? No, I don't think so. Certainly as to the concession of deportability, but this is a separate issue, again, that would go before the sentencing judge of the mens rea or the mind state of the individual when they come back. I guess what I'm saying, doesn't that sort of say that the judge was looking at the facts and didn't find those facts compelling to fall within a departure? Isn't that one interpretation you could have of that statement? I just don't think it is, given the use of the word precedent. What you're saying is when a person's being sentenced to a long period of imprisonment, that there really ought to be no ambiguity when the judge imposes sentences. Just be a little more careful and make it clear. All right? You want to save a minute or so for rebuttal? Sure. Thank you, Your Honor. May I please have the court? My name is James Hagerty. I represent the United States in this matter. As Ms. Pinnell has indicated, the real issue in this case is whether the language of the court, the decision of the court, either evidenced the knowledge that he had, the discretion on the part about this, what he later refers to as a due process argument. Well, the district court judge says that the sentence imposed by the guidelines is unjust, not fair, shouldn't happen. But he says I've got to impose a sentence. What should we, how should we interpret that? I think you have to interpret it in light of the entire language. If you read the transcript of the. Why should we have to do that? But the transcript on the page of the transcript. Were you there? Yes, I was, Your Honor. Did you say, well, Your Honor, it's, you know, this may go before the Ninth Circuit, and you may get some finicky judges, and maybe you ought to make clear on the record that you're aware that you have discretion to depart downward, and you're not going to exercise that discretion. See, then we wouldn't even be here. That's correct, Your Honor. And I'm not going to. We're always happy to hear these appeals because it gives us full employment, you see. So that's all right. I agree with the court. And I think that's the solution is pretty straightforward and easy, and that would be is that the government should stand up and say, Your Honor, please put on the record whether you, if this is discretionary, whether you believe you're prohibited. Well, how are you hurt by a remand here? The government is, at the end of the day, we're not hurt. I mean, I would be candid to say we're not hurt. We're going to go back. We're going to do this. The issue is, I think, it gets right down to it, is did this judge say that he had the discretion and chose not to? And I think he did say that. And now cases, the cases have come along, and there's been this development of the area of this law about silence doesn't mean he didn't acknowledge. He doesn't have to specifically give his reasons. It just has to appear. And the cases seem to indicate is that the judge should say, I do not have discretion. I am prohibited at the same time. Give me your best argument about what your co-counsel has stated. There is no precedent. Or have I made your best argument for you on that by saying he ruled he considered Mendoza, and that case talks about discretion? I think that the statement that there is no precedent means is that there is no case on point. That is, there is no case wherein someone has taken an appeal on the issue of the, as they called it, the summary nature of the immigration process. And as for his saying that Mendoza doesn't apply, I think that's strictly on the basis of the facts. It was a drug case. That individual was transporting. He was involved in large-scale narcotics. But he didn't know the purity. He wasn't involved in the manufacture. And in this case, different than Mendoza, Mr. Barajas went through a process. And whether they argue it being summary, he did, in fact, sign paperwork where he said, I have, you know, I'm waiving my right to a hearing. I'm waiving my right. But that's the argument is. The question is whether or not the judge thought he had the right to impose a lesser sentence. And I believe he did. If you look at the excerpt. He may not. But the question is, we don't know whether he thought he had the authority to impose a lesser sentence. I think there is. Beyond the excerpt of the record at page 36, the district court stated there is no basis for this court to depart, though 57 months is beyond what it seems injustice should be imposed. The language is that he stated there is no basis. And I believe that that statement in conjunction with the other parts of it indicate that he found no basis. Whether there was discretion or not, he said there isn't a basis for a departure in this case. At this point, you concede that the court could depart if it has the discretion to depart. Are you not even conceding that at this point? I don't know that I'd be prepared to state a position on that. I don't feel comfortable that I. Why not? It is the government's position that it wasn't a summary proceeding. He was advised of the consequences. He was told he was being deported. He was told that he could not return to the country. All right. But the section that the co-counsel is citing in terms of which would give the court discretion doesn't say it has to be a summary proceeding or not, doesn't it? The heartland or the. That's correct. But is it outside the heartland if that individual got the same process, was given the same procedure, signed the same notices as any other person who is removed from the country? What makes that procedure in that case, which is done multitudes of times, where does that take it out of the heartland? Because in this case, Mr. Barajas claims to have lack of education. That's an argument, though, that you make once, you know, after discretion is determined to be a possibility. I think the court has discretion. It's not excluded. And so, therefore, yes, the court would. I mean, if we go out there, it would be. I guess our argument is that it doesn't take it out of the heartland. So he would have the discretion. But consider the claim. Consider the claim that, yeah, if they could establish that somehow this individual and this process didn't meet with what is a customary practice done, I'm sure, every day in immigration. And there was no record of it. So we would have argued and would argue on, if this is remanded for that, we would argue the same thing, is that he has not established it outside the heartland. All right. So my understanding, then, of your position here is that it is something that could be argued and fall within that exception. However, your position is it doesn't. But that would be something you'd take away. That would be correct. That would be the argument we would make on this. We just we believe that the language is there. And under the case law, the judge does not say, I do not have the discretion. I am, you know, I'm prohibited from making this. But, rather, he indicates there's no precedent that you've shown me on this case. Mendoza's not applicable. And later on says there is no basis for a departure. And, therefore, he exercised his discretion and he realized he did have that discretion. Thank you. Thank you. I see these initials after your name. F.P. I think it's Assistant Federal Public Defender. They left the D off. Yes, Your Honor. Thank you. The only thing that I would add is when the judge said there is no basis, the judge didn't make clear in that sentence whether or not there was no factual basis or no legal basis. I think that the word precedent, when one talks about there being a lack of precedent, my understanding is there's a lack of legal authority, meaning this has not been recognized as a basis for a downward departure, much as the case, for instance, in Sanchez Rodriguez, where this Court en banc held that the type of prior aggravated felony could be something that could be taken into account by the Court. That was before Sanchez Rodriguez came out. Certainly, that wasn't a part of the sentencing guidelines. It was nowhere to be found. And the judge in that case thought there was no precedent or legal basis to reduce the guideline range or a downward departure on that basis. So I think the same is true here, that Judge simply didn't think that Mendoza could cross over into an alien case. But that's the question I asked, that I started to ask. What sentence do you feel he should get? I think a sentence in the range of three, three-and-a-half years, 37 to 40 months rather than the 56 months would be a more appropriate sentence, Your Honor. If there's nothing else, thank you. Okay.  The matter is submitted. And the next two cases, Salvador Rivera v. John Ashcroft. Salvador Rivera v. John Ashcroft, they're submitted on the briefs. Now we come to Michael Sharp v. James Blodgett.
judges: Pregerson, Ferguson, Callahan